# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

XIAN LE OU                                  CIVIL ACTION NO. 05-0979-M

VERSUS                                      JUDGE ROBERT G. JAMES

TOM RIDGE, ET AL                            MAG. JUDGE KAREN L. HAYES

## RULING

Pending before the Court is a Petition for Writ of Habeas Corpus [Doc. No. 3] filed by Petitioner Xian Le Ou ("Ou") on June 27, 2005. On December 15, 2005, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 13] in which she recommended that the Court dismiss Ou's Petition. On January 3, 2006, Ou filed "Petitioner's Objections to the Proposed Findings of the Magistrate Judge Filed on December 15, 2006" [Doc. No. 14]. On January 13, 2006, Respondents filed a Response to Petitioner's Objections to the Report and Recommendation [Doc. No. 15]. On February 28, 2006, in response to this Court's Order, the parties filed additional status reports.

For the following reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation of the Magistrate Judge and ORDERS Ou to be released from ICE custody immediately under appropriate terms.

## I.      Factual and Procedural Background

Ou is a citizen of China who came to the United States illegally on May 18, 1994, via boat. He applied for asylum in July 1994 and was released on bond the following month.

1

A hearing was set in his case for November 2, 1995, but Ou did not appear and was ordered excluded *in absentia*. ICE has produced an affidavit written in English and signed by Ou in which he requested the discontinuance of his exclusion proceedings. However, according to his current attorney, Ou did not appear at the hearing because of ineffective assistance of counsel. In support of this allegation, Ou has presented an affidavit from his former neighbor, Lian Guan Jiang ("Jiang"). Jiang testifies that he accompanied Ou to his appointment with an attorney at a law firm in New York because Ou did not speak English and was not familiar with New York. According to Jiang, the attorney told Ou that his law firm would call with the hearing date and to wait for the call. When Ou had not heard from the attorney, in early 1996 Jiang called the law firm and was told that Ou missed his court date. Jiang further testified that Ou was later told that there was nothing the law firm could do to help him.

The agency then known as Immigration and Naturalization Services ("INS") gave three notices to Ou's prior attorney to produce him. In 2003, after Ou's attorney failed to produce him, ICE ordered that he be taken into custody.

In the meantime, in 1995 and 1999, Ou fathered two children and then married the mother of the children in late 1999. Ou and his wife have since had two more children. On March 23, 2001, Ou's wife, an American citizen, filed a Petition for Alien Relative (Form I-130). This petition was denied on August 15, 2002, because Ou and his wife married while he was "in deportation proceedings, or judicial proceedings related thereto." The decision further explained that Ou's wife had failed to request an exemption from this prohibition.

However, on July 20, 2004, Department of Homeland Security, Bureau of Citizenship and Immigration Services ("CIS") approved the I-130 Petition for Alien Relative, noting that Ou would have to file for adjustment of status.

Ou and his wife then took steps toward adjusting his status. Ou allegedly went to a local police station, so that he could be fingerprinted and provide these fingerprints to CIS with the I-485 Adjustment of Status Application. Before he could complete the adjustment of status application process, on October 14, 2004, Ou was taken into custody by agents of the agency now known as Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE").

At the time he was taken into custody, Ou was subject to a final order of removal and thus was automatically detained. Shortly after he was taken into custody, however, Ou, through counsel, filed a motion to have his exclusion case reopened. On January 13, 2005, an immigration judge in Atlanta granted Ou's motion and reopened his exclusion case. Because his case has been reopened Ou is no longer subject to a final order of removal, and his detention is discretionary.

On January 21, 2005, Ou's attorney filed a request for release with ICE. ICE denied his request without a bond or bail hearing on the basis that he is a "flight risk" since he failed to appear in 1995. In his declaration, Deportation Officer Miguel Perez-Otero states that "[i]t also appears that Petitioner is ineligible for release according to [67 Fed. Reg. 68924]." [1] His attorney has since reapplied for Ou's "humanitarian parole" on three occasions, but received no response at all. Officer Perez-Otero declares that he only found the request dated January 21, 2005, in Ou's file, [2]

---

[1] This regulation is summarized as follows: "Aliens falling within this newly designated class who are placed in expedited removal proceedings will be detained, subject to humanitarian parole exceptions, during the course of immigration proceedings, including, but not limited to, any hearings before an immigration judge. The Service believes that implementing the expedited removal provisions, and exercising its authority to detain this class of aliens under 8 CFR part 235, will assist in deterring surges in illegal migration by sea, including potential mass migration, and preventing loss of life. A surge in illegal migration by sea threatens national security by diverting valuable United States Coast Guard and other resources from counter-terrorism and homeland security responsibilities."

[2] It is unclear to the Court if Ou's file is complete, however, since Officer Perez-Otero had a copy of the August 15, 2002, denial of the I-130 Petition for Alien Relative, but failed to

but it would have made no difference how many requests were in Ou's file. According to Officer Perez-Otero, it is the policy of the field office of ICE not to respond to release requests unless "parole was merited."

According to the parties' status reports, there are two distinct on-going immigration proceedings: (1) an exclusion proceeding and (2) an adjustment of status proceeding. The exclusion proceeding is prosecuted by ICE while the adjustment of status proceeding is administered by CIS. Ou previously moved for dismissal of his exclusion proceedings, so that he could pursue his adjustment of status. However, ICE opposed the motion, and it was denied by the immigration judge. Ou has since sought asylum in the immigration court on the bases that he will be forcibly sterilized upon his return to China because he has violated its one child policy and that he will be subjected to jail and torture upon his return. His asylum claim is currently set for a hearing on April 6, 2006.

No further action can be taken in Ou's adjustment of status case as long as he is in the custody of ICE and unable to appear for a biometrics appointment with CIS at one of its application centers.

The evidence submitted by Ou's attorney shows that Ou lives with his wife and four children in Bay Minette, Alabama. Ou owns a Chinese buffet restaurant, pays income taxes, and volunteers with the local fire department. Not only is he not considered a danger in his community, but his attorney has submitted numerous letters of support and a petition for his release from local residents.

Ou remains housed at the Tensas Parish Detention Center within the jurisdiction of this

mention anything in Ou's record showing that CIS subsequently approved the I-130 Petition on July 20, 2004.

Court.

II.     **Law and Analysis**

A.     **Jurisdiction**

The Court agrees with and ADOPTS the Magistrate Judge's analysis on pages 3-4 of her Report and Recommendation regarding jurisdiction.  Specifically, the Court agrees with the Magistrate Judge that it does not have the statutory authority to review an Attorney General's discretionary determination on detention under 8 U.S.C. § 1226(e), but that the Court does have jurisdiction to consider Ou's constitutional challenge to his detention.

B.     **Due Process**

The Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.  *Zadvydas v. Davis*, 533 U.S. 678, 699, (2001); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").  The Due Process Clause contains both a substantive and procedural component.  *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

The issue before the Court is whether Ou's procedural or substantive due process rights have been violated by his continued detention under 8 U.S.C. § 1226(a) once his exclusion case was reopened when (1) he is not a criminal alien; (2) he did not receive an individualized bail or bond determination, but was jailed solely on his 1995 failure to appear and under the proposed "expedited removal" regulations for certain aliens; and (3) he has now been detained for almost one and one-half years.

There is no precedent on this issue in the Supreme Court or Fifth Circuit Court of Appeals.  In her Report and Recommendation, the Magistrate Judge relied on *Demore v. Kim*, 538 U.S. 510

(2003), in which the Supreme Court case analyzed the due process claims of a criminal alien held under 8 U.S.C. § 1226(c)'s requirement that the Attorney General "take into custody any alien who" is removable because he was convicted of certain crimes, including two crimes involving "moral turpitude" or a crime constituting an "aggravated felony."

In that case, Kim argued that his detention for six months during the pendency of his removal proceedings violated his due process rights. The Supreme Court conducted a lengthy analysis in which it noted that statistics showed a high likelihood of flight among criminal aliens. The Supreme Court also noted that the period of detention during the immigration proceedings was of "much shorter duration" than the "period of detention at issue in *Zadvydas*," which could be "indefinite" and "potentially permanent." *Id.* at 528. According to the Supreme Court, on average, a criminal alien is detained one and one-half months if he does not appeal the immigration court's decision or five months if he does appeal. While the alien in *Kim* was "detained for somewhat longer than the average . . . [he] had requested a continuance of his removal hearing." [3] *Id.* at 530-31. Ultimately, the Supreme Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process" for criminal aliens who have conceded that they are deportable. 538 U.S. at 531.

The Magistrate Judge applied *Kim*'s analysis for the proposition that "the lack of an individualized determination" on Ou's request for bond or parole "does not automatically constitute a denial of due process." [Doc. No. 13, p. 5]. She concludes:

As with the aliens in *Denmore* [sic] who were detained based on a statistical

_____

[3]No evidence has been submitted to the Court regarding whether removal proceedings for aliens subject to discretionary detention generally resolve more or less quickly than mandatory detention cases, but, obviously, Ou has been detained far longer than the five-month period contemplated as constitutionally valid under *Kim*.

6

likelihood that they would fail to appear at their deportation hearings, ICE may continue to detain the petitioner based on his failure to appear, for whatever reason, at his exclusion hearing in 1995. The reopening of petitioner's exclusion proceedings guarantees a forthcoming removal decision and ensures that petitioner's detention will not be "indefinite" or "potentially permanent." Given petitioner's failure to appear at an earlier exclusion hearing and the "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceeding," it is recommended that the petition for habeas corpus be **DISMISSED**.

[Doc. No. 13, p. 5].

The Court DECLINES TO ADOPT the Magistrate Judge's analysis and conclusion. As Ou points out in his objections, he is not detained under the § 1226(c) mandatory no-bail provision, but under the § 1226(a) discretionary provision.[4] Ou has no criminal convictions, and neither the concerns about danger to the community nor the evidence presented to the Supreme Court on the statistical likelihood that criminal aliens will abscond are applicable to this case.

Although the Fifth Circuit has not fully addressed the due process concerns raised by Ou, it has provided some guidance in an unpublished case. In *Oyelude v. Chertoff*, 125 Fed. Appx. 543, (5th Cir. Mar. 11, 2005), the petitioner had been detained under § 1226(a), but the district court dismissed his petition as foreclosed by *Kim*. On appeal, the Fifth Circuit vacated that decision and remanded, stating: "The [Department of Homeland Security] invokes language from *Kim* that one might read in a vacuum as supporting its contention [that petitioner could not challenge his detention during removal proceedings], but that language, when read in context, **does not directly address the constitutionality of non-§ 1226(c) detentions**." *Id.* at 546 n.9 (emphasis added).

In fact, the Fifth Circuit took issue with the district court's reliance on *Kim* for the

_____

[4]Under § 1226(a), the Attorney General has three options: (1) detention, (2) release on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General, or (3) conditional parole. 8 U.S.C. § 1226(a).

proposition that "[d]etention during removal proceedings is a constitutionally permissible part of that process" without including the "next, significant sentence: 'The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by' [the cases cited for the proposition in the previous sentence]." *Id.* at 545 (citing *Kim,* 538 U.S. at 531). The Fifth Circuit then remanded to the district court for a determination as to whether the petitioner's detention was constitutional under § 1226(a), but "express[ed] no view as to the ultimate merits of this proceeding." [5] *Id.* at 547.

### 1.    Substantive Due Process

The Court had some initial concern in this case that the length of Ou's detention appeared to be "indefinite," not the detention of "much shorter duration" contemplated in *Kim. See Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) (The Supreme Court's "discussion in *Kim* is undergirded by reasoning relying on the fact that Kim, and persons like him, will normally have their proceedings completed within a short period of time and will actually be deported, or will be released."). Ou has been detained for almost one and one-half years, far longer than the five month period approved in *Kim.*[6]

However, based upon the latest status reports from the parties, there appears to be at least

_____

[5]The Fifth Circuit refused to grant Oyelude's requests for (1) release during the pendency of his petition, (2) an order that [CIS] adjudicate his I-130 petition [i.e., petition for alien relative], and (3) a direction to the Attorney General to expedite the processing of his I-130 petition. While stating that Oyelude had not cited authority for his requests, the Fifth Circuit denied the requests because the district court "has not had an opportunity to rule." *Id.* at 547 n.12.

On remand, Oyelude's case was dismissed as moot because he had been released on supervision after a final determination of the BIA. *See Oyelude v. Ridge*, Civil Action No. 1:03cv00095, United States District Court, Northern District of Texas, Abilene Division.

[6]Of course, the Court reiterates that the time period approved in *Kim* was also based on a number of factors not present in this case.

some indication that Ou's exclusion proceedings will conclude in the near future. Accordingly, the Court finds that Ou's substantive due process rights have not been violated.

## 2. Procedural Due Process

The Court now turns to Ou's procedural due process rights. As pointed out by Ou's counsel, when Ou was initially taken into custody he was subjected to a final order of removal. That is no longer the case. Once his exclusion proceedings were reopened, Ou was subject to discretionary detention under § 1226(a).[7]

ICE contends that this discretionary detention is permissible and should not be reviewed by the Court. However, what ICE fails to address is the fact that there was no true exercise of discretion in this case. Ou was not provided an individualized determination of whether he is an appropriate candidate for parole or release on bond. Instead, it appears from the record presented to the Court by ICE that a Deportation Officer at a Field Office decided as a matter of course that because Ou failed to appear at a hearing once 10 years ago that he could not be released on detention regardless of current circumstances or the reason for his failure to appear.

As further pointed out to the Court, this same Deportation Officer relied upon regulations that are inapplicable to Ou's case. Officer Perez-Otero cites to regulations requiring the detention of aliens who arrived by boat, have been in the country less than two years, and are under expedited removal proceedings. These regulations do not apply. Ou is not in expedited removal proceedings, and he has clearly been in the country longer than two years.

The Court understands the concern ICE may have about aliens who have failed to appear for

_____

[7]Counsel for Ou notes that, even after Ou's exclusion case was reopened, ICE continued to believe that there was a final order of removal and asked Ou to sign certain documents in order to facilitate his deportation to China.

a hearing in the past. An unexplained or unjustified failure to appear certainly could be a factor in ICE's decision to detain an alien. In this case, however, Ou was given no opportunity to be heard on the reasons for his failure to appear, and there is no indication that Ou has hidden his location. In fact, Ou has paid taxes and maintained a permanent address for some time. He was apprehended by ICE after attempting to have his fingerprints taken, so that he could support an application to adjust his alien status. If anything, Ou has shown that he is taking every step to remain in this country legally. Additionally, unlike a criminal alien, Ou is no danger to his community, but, according to letters and the petition, a vital part of his community in Bay Minette, Alabama.

The Court is well aware that the Attorney General has the right to make a discretionary determination that an alien may be detained. If there had been a fair and individualized determination in this case, then it might survive due process. *See Agyeman v. INS Assistant District Director Coachman*, 74 Fed.Appx. 691, 694 (9th Cir. 2003) (An alien's detention for six years was determined to survive due process because it was implemented in a fair manner where he had an individualized bond determination; his custody status has been reviewed at least eight times, five of which were at his request; and he was eventually released on a $5,000 bond). However, in this case, ICE has not fairly or properly adjudicated Ou's request for parole or bond at all, and the actions of the agency in this case violate his procedural due process rights.

## III.    CONCLUSION

For the foregoing reasons, the Court finds that Ou's procedural due process rights have been violated, and ICE is ordered to release him from custody immediately [8] and allow him to

---

[8]The Court is aware that a hearing is scheduled shortly in Ou's exclusion case and that this release may be of short duration. Nevertheless, given the procedural due process violation in this case, the Court expects ICE to comply with its order and release Ou immediately upon receipt of this Order and not to delay processing his release.

return to his home under appropriate terms of supervision.

Monroe, Louisiana, this 14th day of March, 2006.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE